IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THEODORO K.,[1] | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | No. 21 C 4491 |
| v. | ) | |
| | ) | Magistrate Judge |
| KILOLO KIJAKAZI, Acting | ) | Maria Valdez |
| Commissioner of Social Security, | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Theodoro K.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 10] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 13] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

## BACKGROUND

### I. PROCEDURAL HISTORY

On March 28, 2019, Plaintiff filed a claim for DIB, alleging disability since July 26, 2018. The claim was denied initially and upon reconsideration, after which he timely requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on January 26, 2021, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On February 11, 2021, the ALJ denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since his alleged onset date of July 26, 2018. At step two, the ALJ concluded that Plaintiff had the following severe impairments: multiple sclerosis; adjustment disorder; and generalized anxiety disorder. The ALJ

concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: can stand four hours and walk two hours out of an eight-hour workday, but cannot exceed a combined total on his feet of more than four hours per day; requires the opportunity to stand for two-to-three minutes after sitting for thirty minutes; can occasionally push and pull with the left lower extremity and left upper extremity; can frequently reach with the left upper extremity; can frequently handle and finger with his left hand; can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally balance, stoop, kneel, crouch, and crawl; can never work at unprotected heights or near moving mechanical parts; can only occasionally be exposed to extreme cold; and is restricted to understanding, remembering, and carrying out simple, routine, and repetitive tasks. At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a retail store manager, HVAC installer, stock clerk, or inventory clerk. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff can perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

I. **ALJ LEGAL STANDARD**

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

4

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

5

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

6

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ failed to support his finding of no listing level severity pursuant to listing 11.09; (2) the ALJ failed to support his finding that Plaintiff could perform unskilled work within the context of a full-time work environment; and (3) the ALJ failed to support his rejection of the opinions of Dr. Zara Schulman and Dr. George Katsamakis. Each argument will be addressed below in turn.

#### A. <u>Listing Level Severity</u>

For his first argument, Plaintiff contends that the ALJ erred by "summarily dismiss[ing] listing 11.09." (Pl.'s Memo. at 8.) In assessing listing 11.09 in his step three analysis, the ALJ stated as follows:

> I considered whether the claimant meets listing 11.09. However, the claimant is able to walk without the use of two crutches, two canes, or a walker. He did not demonstrate marked physical functioning. Physical examinations showed he exhibited normal range of motion and normal or near normal strength in his extremities following treatment. He exhibited an abnormal gait without the use of an assistive device. Further, as discussed below, the claimant did not demonstrate marked limitation in any broad mental functioning areas. The medical and objective evidence showed moderate limitation of his ability to concentrate, persist or maintain pace and mild limitation of the remaining areas of mental functioning.

(R. 20 (citations omitted).)

Plaintiff attacks the ALJ's step three analysis as cursory. As an initial matter, the Court disagrees with that characterization. Furthermore, and in any event, as a general matter, "a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation of this finding [and] [a]n adjudicator's articulation of the reason(s) why the individual is or

7

is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Social Security Rule (SSR) 17-2p. *See also Lisa S. v. Saul*, No. 19 C 862, 2020 WL 5297028, at *8 (N.D. Ill. Sept. 4, 2020). Accordingly, an ALJ's step three analysis, even if cursory, does not warrant remand if the ALJ's decision otherwise fulsomely assesses a claimant's physical and mental limitations. The Court finds that the ALJ did so here. Plaintiff does not grapple with the concept that the reasoning underlying a step three analysis can be set forth anywhere in the decision. *See Curvin v. Colvin*, 778 F.3d 645, 650 (7th Cir. 2015) ("[T]he ALJ provided the discussion of Curvin's severe and non-severe impairments, the objective medical evidence, and her credibility directly after step 3 when he determined her RFC. This discussion provides the necessary detail to review the ALJ's step 3 determination in a meaningful way. We do not discount it simply because it appears elsewhere in the decision. To require the ALJ to repeat such a discussion throughout his decision would be redundant.").[2]

Additionally, with respect to the mental component of listing 11.09, Plaintiff argues that the ALJ erroneously "relied solely upon [a] cursory assessment of the so-called paragraph B functional criteria for mental listings." (Pl.'s Memo. at 9.) In advancing that argument, Plaintiff contends that "[t]hough the ALJ determined that there was only moderate (as opposed to marked) limitation in the area of

---

[2] Plaintiff argues in particular that the ALJ improperly discounted the opinions of Dr. George Katsamakis that would support a finding of listing level severity under listing 11.09. However, as detailed below, the Court concludes that the ALJ's assessment of Dr. Katsamakis' opinions was properly supported.

8

concentrating, persisting, or maintaining pace, the medical record suggests otherwise." (*Id.*) As an initial matter, Plaintiff himself concedes that he "does not necessarily argue that listing level severity should have been established at Step 3 based solely upon his mental impairments." (*Id.* at 12.) Furthermore, Plaintiff's argument concerning the mental aspect of listing 11.09 ultimately amounts to a request that the evidence be re-weighed. The Court declines Plaintiff's invitation to reweigh the evidence in relation to the ALJ's mental impairment findings, which is forbidden. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### B. Concentration, Persistence, or Pace

For his second argument, Plaintiff contends that the ALJ's "RFC assessment fall short of accommodating Plaintiff's non-exertional deficits." (Pl.'s Memo. at 11.) In advancing that argument, Plaintiff focuses on the functional area of concentration, persisting, or pace, asserting that the ALJ failed to sufficiently "explain or justify [his] finding that Plaintiff can perform simple, routine, and repetitive tasks on a full time basis." (*Id.* at 13.) With respect to the functional area of concentration, persistence, and pace, the ALJ found that Plaintiff had a moderate limitation. (R. 21.) In finding that Plaintiff did not have more than a moderate limitation in that area, the ALJ noted that Plaintiff is able to drive, prepare meals, and manage funds. (*Id.*) The ALJ further noted that mental status examinations showed Plaintiff exhibited normal thought content, normal thought processes, and normal memory. (*Id.*) The ALJ also elsewhere noted that Plaintiff "reported he was able to return to work thirty to thirty five hours a week in November and December

9

2020." (*Id.* at 25.) As stated above, in his RFC assessment, the ALJ limited Plaintiff to understanding, remembering, and carrying out simple, routine, and repetitive tasks. (*Id.* at 22.)

Plaintiff argues that "an ALJ may not rely upon catch-all terms like 'simple, repetitive tasks' without explaining how such restrictions account for the individual's mental deficits." (Pl.'s Memo. at 13.) However, an ALJ's use of catchall phrases (such as "simple, routine tasks") in an RFC, without more, does not necessitate remand. *See Recha v. Saul*, 843 F.App'x 1, 4 (7th Cir. 2021) (noting that the use of boilerplate language, by itself, is not reversible error). Furthermore, crucially, Plaintiff has not articulated what sort of verbiage the ALJ should have used with respect to his asserted limitations with concentration. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("Although [the claimant] complains that the pace requirements are too vague, there is only so much specificity possible in crafting an RFC. The law required no more."). Accordingly, Plaintiff's challenge regarding concentration, persistence, and pace must fail. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none.").

Plaintiff also contends that "the ALJ failed to account for the interplay between Plaintiff's physical pain and other symptoms and his ability to sustain concentration, persistence, or pace." (Pl.'s Memo. at 13.) The Court finds that Plaintiff's argument that the ALJ did not sufficiently consider his impairments

together in combination must fail as it amounts to an impermissible request that the evidence be re-weighed. *See Cindy P. v. Kijakazi*, No. 20 C 6708, 2022 WL 2802328, at *4 (N.D. Ill. July 18, 2022) ("While Plaintiff argues that the ALJ did not sufficiently assess her impairments in combination, the Court agrees with Defendant that Plaintiff's contention in that regard amounts to an invitation for the Court to reweigh the evidence.").

### C. The Opinions of Drs. Zara Schulman and George Katsamakis

For his final argument, Plaintiff contends that the ALJ improperly discounted the opinions of Dr. Zara Schulman, his treating physician, and Dr. George Katsamakis, his treating neurologist. Because Plaintiff filed his claim on March 28, 2019, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two

11

most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

> In this case, the ALJ assessed Dr. Schulman's opinions as follows:
>
> I considered the opinions of Zara Schulman MD dated June 16 and July 29, 2020. I found the opinions to be persuasive to the extent they support the reduced standing and walking limitations adopted limiting the claimant to a combined limit of standing no more than four hours and walking no more than two hours in an eight-hour workday. To that extent, Dr. Shulman's opinions were well supported by her treatment records that showed the claimant responded well to medication and exhibited a wide based gait with the ability to walk without an assistive device with some balance deficits and circumlocution. To the extent Dr. Shulman's opinion assessed greater limitations, it was inconsistent with the longitudinal record as a whole that showed the claimant exhibited greater function with normal passive range of motion, strength, and the ability to walk without an assistive device.

(R. 27 (citations omitted).) So, the ALJ found Dr. Schulman's opinions persuasive to the extent they were supported by her treatment records, but rejected Dr. Schulman's more extreme opinions as unsupported by and inconsistent with the medical record as a whole. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in partly-accepting and partly-discounting Dr. Schulman's opinions. *See* 20 C.F.R. § 404.1520c(b)(2).

12

> As for Dr. Katsamakis' opinions, the ALJ explained as follows:
>
> I considered the opinion of George Katsamakis, MD dated January 4, 2021. I found the opinion to be persuasive to the extent it supported a reduced range of work at a light exertional level with no more than four hours of walking. While Dr. Katsamakis indicated some limitations in all broad mental functioning areas, his opinion in that regard was unpersuasive as he failed to specify the extent of the limitation other than describing it as "serious" which is vague and ill-defined. Further, Dr. Katsamaki's opinion that the claimant required two canes, two crutches, or a walker is inconsistent with the claimant's testimony that he used one cane and inconsistent with the medical evidence that showed he exhibited an improved stance and gait with the ability to walk unassisted. Dr. Katsamakis further opined the claimant would miss more than three days per month of work, but he failed to specify the reason for such absences. Dr. Katsmakis treatment records do not support a need for excessive absences nor does the longitudinal evidence. The longitudinal records reflect the claimant responded well to treatment and his symptoms stabilized with no further progression noted on diagnostic imaging.

(R. 27 (citations omitted).) So, the ALJ found Dr. Katsamakis' opinions persuasive to a certain extent, but otherwise discounted the opinions because, in sum, they were imprecise, inconsistent with Plaintiff's own reports, inconsistent with the medical record, unsupported by specific explanations, and unsupported by the doctor's treatment records. Again, given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in largely rejecting Dr. Katsamakis' opinions. *See* 20 C.F.R. § 404.1520c(b)(2). Accordingly, Plaintiff's final argument must fail.

## **CONCLUSION**

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 10] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 13] is granted.

**SO ORDERED.**  **ENTERED:**

**DATE:** **November 17, 2022**  _____
**HON. MARIA VALDEZ**
**United States Magistrate Judge**